THE LENAWEE COUNTY SAVINGS BANK v. THE CITY OF ADRIAN ET AL.

*Taxation—Banking corporation.*

1. A savings bank organized under the general law of this State is not taxable except for real estate under the tax laws of 1882 and 1885.
2. Under the tax law of 1882, the shares of stock issued by a bank include in their value all of the property of the bank, including its real estate, the value of which is to be deducted for separate taxation.
3. A corporation is always, so far as its property is concerned, a mere trustee for its stockholders, whose interests are in its corporate charge.
4. The tax law of this State has provided that, except as to real estate, all taxation of bank property shall be against the shareholders, who are the equitable and beneficial owners of all the assets, although in law the corporation is a distinct person; every share representing an aliquot portion of such assets, which in the aggregate are represented by all of such shares.

Appeal from Lenawee. (Howell, J.) Argued May 4, 1887. Decided June 9, 1887.

Bill to enjoin collection of tax. Decree dismissing bill reversed, and perpetual injunction granted. The facts are stated in the opinion.

*Weaver & Weaver*, for complainant.

*J. W. Helme, Jr.*, for defendants.

CAMPBELL, C. J. The city of Adrian, in 1885, taxed all the shareholders in complainant's savings bank upon their shares, and, in addition thereto, undertook to tax the complainant, as a corporation, for its bank fixtures, valued at $1,000, and for $30,000 as an alleged surplus of property

beyond its nominal capital stock of $60,000. Complainant claimed it was not taxable except for real estate. This bill was filed to restrain defendants from enforcing the tax on this property, which the defendant Morey was proceeding to do by seizure of the bank furniture and fixtures.

Under the law of 1885, this controversy could hardly have arisen, as its terms are very explicit, and sustain complainant's claim; which, however, seems equally well based under the tax law of 1882, which is in furtherance of the settled policy of this State.

By section two of that law, taxes were required to be levied on—

" All shares in corporations organized under the laws of this State, when the property of such corporation is not exempt, or is not taxable to itself."

By the same section it is declared that—

" Shares in corporations, the property of which is taxable to itself, shall not be assessed to the shareholder."

By section 11, it was declared:

" All shares in banks shall be assessed to their owners, in the town where the bank is located: *Provided,* That shares owned by a person residing within the county where the bank is located shall be assessed in the town where he resides."

By section 13, the description of property to be assessed is required to contain—

" All shares in banks organized in this State, under any law of this State or of the United States, and their value after deducting the value of the real estate taxed to the bank."

By section 12, the cashier of every bank was required to file, in the office of the county clerk, annually,—

" A statement of all real estate held by the bank, and its value, a list of the names of the stockholders, the amounts of stock held by each, and their respective residences."

This is the only statement of assets required by the tax law

to be made out by any bank; while all tax-payers are required, when demanded, to show their taxable property, and shareholders, by section 13, are directed, in estimating values, to deduct real estate of the bank.

This statute is very full, and shows with great precision, how corporate property is treated. It indicates that shares include in their value all of the property of the bank, and then treats the real estate as so included, and requires it to be deducted for separate taxation. If the shares were regarded as only covering the nominal capital paid in, it might easily happen that this capital might remain intact, and a surplus only be invested in real estate; in which case the result would be to deduct from what ought to be taxed so much as the value of the land would amount to, and, if the land is worth as much as the nominal capital, that would, on this theory, escape taxation entirely. This would lead to absurd results.

The statute says, expressly, there shall be no taxation whatever of shareholders where the corporation property is assessed to itself, and the meaning of this is obvious. A corporation is always, so far as its property is concerned, a mere trustee for its stockholders, whose interests are in its corporate charge. It can make no great difference to the State whether the *cestuis que trustent* pay their taxes directly, in person, or have them paid by their trustee out of the trust funds. But the conditions imposed by Congress on the taxation of property in national banks made it desirable for the State to make bank taxation as nearly uniform as possible; and our tax law has provided that, except as to real estate, all such taxation shall be against the shareholders, who are the equitable and beneficial owners of all the assets, although in law the corporation is a distinct person. Under this statute the value of the shares must necessarily depend on the financial condition of the bank. Presumptively, an earned surplus will add proportionately to the value of the stock. There may be circumstances which will make the

market value larger or smaller than this proportion, depending very much on the standing of the bank, and its management, as well as the condition of the money market. But, in the eye of this statute, every share represents an aliquot portion of all the bank assets, and all the shares represent all the assets.

This is the plain meaning of the statute, and it is better adapted than any other system to avoid the risk and mischief of double taxation. Whether it is legally possible to levy double taxes under any circumstances, as it is claimed some authorities justify, there is no doubt they ought not to be levied, and we have no doubt this statute has prevented banks and their shareholders from being subjected to them.

No point was made in the pleadings or on the argument against the jurisdiction of equity in this case. As the bank was not liable to taxation at all on its personal property, and the levy was made in such a way as to directly interfere with its business, the case comes within the analogies of the cases represented by *Osborn v. Bank of U. S.*, 9 Wheat. 738, from which it cannot be readily distinguished. The court below does not appear to have doubted the jurisdiction, although deciding in favor of defendants on the merits.

We think the taxation was illegal, and that a perpetual injunction should issue, and relief be granted as prayed.

The other Justices concurred.